## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jul 17 2019, 9:15 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Megan B. Quirk
Muncie, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Monika Prekopa Talbot
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Matter of the Involuntary Termination of the Parent-Child Relationship of P.W. (Minor Child); | July 17, 2019 |
| R.W. (Father), | Court of Appeals Case No. 19A-JT-310 |
| *Appellant-Respondent,* | Appeal from the Delaware Circuit Court |
| v. | The Honorable Kimberly S. Dowling, Judge |
| Indiana Department of Child Services, | The Honorable Amanda Yonally, Magistrate |
| *Appellee-Petitioner.* | Trial Court Cause No. 18C02-1807-JT-64 |

**Pyle, Judge.**

# Statement of the Case

R.W. ("Father") appeals the termination of the parent-child relationship with his daughter, P.W. ("P.W."), claiming that the Department of Child Services ("DCS") failed to prove by clear and convincing evidence that: (1) there is a reasonable probability that the conditions that resulted in P.W.'s removal or the reasons for placement outside Father's home will not be remedied; (2) a continuation of the parent-child relationship poses a threat to P.W.'s well-being; and (3) P.W. had been adjudicated a Child in Need of Services ("CHINS") on two separate occasions. Concluding that there is sufficient evidence to support the trial court's decision to terminate the parent-child relationship, we affirm the trial court's judgment.[1]

We affirm.

# Issue

Whether there is sufficient evidence to support the termination of the parent-child relationship.

# Facts

The evidence and reasonable inferences that support the judgment reveal that P.W. was born in October 2014. In February 2017, when P.W. was two years old, Father was charged with two counts of Level 2 felony dealing in a narcotic

---

[1] P.W.'s mother ("Mother") is not a party to this appeal.

drug and two counts of Level 5 felony neglect of a dependent for selling heroin in the presence of P.W. Father admitted to using heroin but refused to submit to a drug screen. At the time of his arrest, Father, who was homeless, had pending controlled substance possession and dealing charges and was on a pre-trial supervised release program. Following his arrest, Father was taken to the county jail, and P.W. was placed with her paternal grandmother ("Paternal Grandmother"). Shortly thereafter, Paternal Grandmother became ill, and P.W. was placed with family member A.K. ("A.K."). In March 2017, P.W. was adjudicated to be a CHINS.

[4] Father was still incarcerated in July 2018 when DCS filed a petition to terminate his parental rights. Testimony at the termination hearing revealed that the State had offered Father the opportunity to plead guilty to his pending charges in exchange for a fifteen-year sentence. Father had refused the plea offer and planned to go to trial. If convicted, Father was facing a ten- to thirty-year sentence. During his two-year pre-trial incarceration, he had completed two substance abuse programs. He agreed with the State that he had not been able to financially support P.W. or provide her with food, clothing, or shelter for the previous two years. He also agreed that A.K. had been meeting all of P.W.'s needs during that time. Father also testified that he had not seen P.W. for six months because of the visitation changes at the jail.

[5] Also at the hearing, DCS Family Case Manager Miranda Millben ("Case Manager Millben") testified that the conditions resulting in P.W.'s removal had not been remedied because Father was still incarcerated for the charges that had

resulted in P.W.'s removal. The case manager further testified that P.W. was a "complete member of [A.K.'s] family" and that A.K. provided for P.W.'s clothing, food, shelter, and medical needs. (Tr. 82). According to Case Manager Millben, A.K. planned to adopt P.W., and P.W. deserved permanency. CASA Karen Zabel recommended that the trial court terminate Father's parental rights and allow A.K. to adopt P.W.

[6] Following the December 2018 hearing, the trial court issued a detailed eight-page order terminating Father's parental relationship with P.W. Father appeals.

# Decision

[7] Father argues that there is insufficient evidence to support the termination of his parental rights. The Fourteenth Amendment to the United States Constitution protects the traditional right of parents to establish a home and raise their children. *In re K.T.K.,* 989 N.E.2d 1225, 1230 (Ind. 2013). However, the law provides for termination of that right when parents are unwilling or unable to meet their parental responsibilities. *In re Bester*, 839 N.E.2d 143, 147 (Ind. 2005). The purpose of terminating parental rights is not to punish the parents but to protect their children. *In re L.S.,* 717 N.E.2d 204, 208 (Ind. Ct. App. 1999), *trans. denied*. When reviewing the termination of parental rights, we will not weigh the evidence or judge the credibility of the witnesses. *K.T.K.*, 989 N.E.2d at 1229. Rather, we consider only the evidence and reasonable inferences that support the judgment. *Id.*

[8]     A petition to terminate parental rights must allege:

> (B) that one (1) of the following is true:
>
>> (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
>>
>> (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
>>
>> (iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;
>
> (C) that termination is in the best interests of the child; and
>
> (D) that there is a satisfactory plan for the care and treatment of the child.

IND. CODE § 31-35-2-4(b)(2). DCS must prove the alleged circumstances by clear and convincing evidence. *K.T.K.,* 989 N.E.2d at 1231.

[9]     Here, Father argues that there is insufficient evidence to support the termination of his parental rights. Specifically, he contends that the evidence is insufficient to show that there is a reasonable probability that: (1) the conditions that resulted in P.W.'s removal or the reasons for placement outside the parent's home will not be remedied; (2) a continuation of the parent-child relationships poses a threat to P.W.'s well-being; and (3) P.W. had been adjudicated a CHINS on two separate occasions.

At the outset, we note that INDIANA CODE § 31-35-2-4(b)(2)(B) is written in the disjunctive. Therefore, DCS is required to establish by clear and convincing evidence only one of the three requirements of subsection (B). *In re A.K.,* 924 N.E.3d 212, 220 (Ind. Ct. App. 2010). We therefore discuss only whether there is a reasonable probability that the conditions that resulted in P.W.'s removal or the reasons for her placement outside the home will not be remedied.

In determining whether the conditions that resulted in a child's removal or placement outside the home will not be remedied, we engage in a two-step analysis. *In re E.M.,* 4 N.E.3d 636, 643 (Ind. 2014). We first identify the conditions that led to removal or placement outside the home and then determine whether there is a reasonable probability that those conditions will not be remedied. *Id.* The second step requires trial courts to judge a parent's fitness at the time of the termination proceeding, taking into consideration evidence of changed conditions and balancing any recent improvements against habitual patterns of conduct to determine whether there is a substantial probability of future neglect or deprivation. *Id.* Habitual conduct may include parents' prior criminal history, drug and alcohol abuse, history of neglect, failure to provide support, and a lack of adequate housing and employment. *A.D.S. v. Ind. Dep't of Child Servs.*, 987 N.E.2d 1150, 1157 (Ind. Ct. App. 2013).

Here, our review of the evidence reveals that at the time of P.W.'s removal, Father was homeless, unable to provide for his daughter's needs, and had just been arrested for dealing in a narcotic drug and neglect of a dependent for selling heroin in her presence. Two years later, at the time of the termination

hearing, Father was still incarcerated for those offenses and, if convicted, was facing a sentence of ten to thirty years. He was also still unable to provide for his daughter's needs. The evidence further reveals that P.W. was a "complete member of [A.K.'s] family" and that A.K. provided for P.W.'s clothing, food, shelter, and medical needs. (Tr. at 82). This evidence supports the trial court's conclusion that there was a reasonable probability that the conditions that resulted in P.W.'s placement outside the home would not be remedied. We find no error.[2,3]

[13] Affirmed.

Riley, J., and Bailey, J., concur.

---

[2] Father's reliance on *K.E. v. Ind. Dep't of Child Servs.*, 39 N.E.3d 64 (Ind. 2015) is misplaced. There, the Indiana Supreme Court concluded that there was insufficient evidence that there was a reasonable probability that the conditions that resulted in the children's placement outside the home would not be remedied where an incarcerated father was demonstrating his dedication to obtain reunification by speaking to his children nightly on the telephone and bonding with his children through regular visitation. *Id.* at 649. In addition, the father's release from incarceration was less than a year away. Here, Father does not speak to his daughter nightly and is unable to bond with her through regular visitation. In addition, at the time of the hearing, Father's release from prison was possibly ten to thirty years away.

[3] Pursuant to Indiana Evidence Rule 201(b), this Court may take judicial notice of records of a court of this state. Here, we take judicial notice of Father's conviction and sentence in Cause Number 18C03-1702-F2-3. Our review of those records reveals that Father pleaded guilty to one count of Level 2 felony dealing in a narcotic drug and one count of Level 5 felony neglect of a dependent. The trial court sentenced Father to fifteen (15) years for the Level 2 felony and five (5) years for the Level 5 felony and ordered the sentences to run concurrently with each other. Father's earliest possible release date is in April 2028.